UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REGENTS OF THE UNIVERSITY
OF MICHIGAN,

    Plaintiff/Counter-Defendant,

vs.                                                                           Case No. 12-12908

ST. JUDE MEDICAL, INC.,                                         HON. AVERN COHN

    Defendant/Counter-Plaintiff.

_____/

**MEMORANDUM AND ORDER DENYING PLAINTIFF/COUNTER
DEFENDANT'S MOTION TO DISMISS COUNT I OF
DEFENDANT/COUNTER PLAINTIFF'S
<u>FIRST AMENDED COUNTERCLAIM (Doc. 25)</u>**[1]

## I. INTRODUCTION

This is a breach of contract/patent case. Plaintiff/Counter-Defendant Regents of the University of Michigan (U of M) is suing Defendant/Counter-Plaintiff St. Jude Medical, Inc. (St. Jude) claiming breach of a license agreement in which U of M granted St. Jude a licence under certain U of M patents, including U.S. Patent No. 5,746,775 (the '775 patent). U of M's first amended complaint is in one count: breach of contract. St. Jude's first amended counterclaim is in two counts: count I- unjust enrichment; and count II- declaration of invalidity. Now before the Court is U of M's motion to dismiss count I of St. Jude's first amended counterclaim on the grounds that St. Jude failed to file a notice of claim in the Michigan Court of Claims (Doc. 25). For the reasons that follow, the motion

---

[1] Upon review of the papers, the Court deems this matter appropriate for decision without oral argument. <u>See</u> Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

is DENIED.

## II. BACKGROUND

On September 1, 1997, U of M and St. Jude entered into a license agreement in which U of M granted St. Jude an exclusive license under certain U of M patents, including the '775 patent, entitled "Method of Making Calcification-Resistant Bioprosthetic Tissue." Bioprosthetic tissue is human or animal tissue that is implanted in living beings to replace malfunctioning or diseased native tissue, e.g. a heart valve. Frederick J. Schoen, MD, PhD and Robert J. Levy, MD, Calcification of Tissue Heart Valve Substitutes: Progress Toward Understanding and Prevention, 79 Ann. Thorac. Surg. 1072, 1072 (2005). A major role in the failure of bioprosthetic tissue substitutes has been calcification. Id. Calcification is the deposition of calcium and subsequent hardening of the tissue, which causes structural damage to the implanted tissue, possibly requiring replacement if the damage becomes so severe that the tissue no longer functions. The '775 patent provides methods of making bioprosthetic tissue resistant to calcification. This, in turn, prevents hardening of the tissue and allows the bioprosthetic tissue to have a longer life.

The license agreement required St. Jude to pay three or five percent of its net sales, in quarterly royalty fees, depending on the product and where it was sold. St. Jude produces the EPIC™ and TRIFECTA™ cardiovascular valve products, which U of M says are manufactured using a process claimed in the '775 patent and subject to the royalty obligation. U of M says the license agreement requires St. Jude to pay five percent quarterly royalty fees for net sales of EPIC™ and TRIFECTA™ products manufactured or sold in the United States or Israel, and three percent quarterly royalty fees for net sales of EPIC™ and TRIFECTA™ products sold outside of the United States and Israel.

On June 13, 2011, St. Jude notified U of M by letter that its EPIC™ and TRIFECTA™ products sold outside of the United States were not subject to any royalty obligation under the license agreement. Further, St. Jude notified U of M that it had overpaid royalties for EPIC™ and TRIFECTA™ products manufactured and sold outside of the United States from 2009 to 2011. St. Jude claimed the overpayment was approximately $4.3 million, and that it would apply this amount as a credit towards future royalties. Prior to sending the June 13 letter, St. Jude had paid a five percent royalty on all sales of its TORONTO ROOT™, EPIC™ and TRIFECTA™ products.

On July 2, 2012, U of M filed a one-count breach of contract complaint against St. Jude.[2] U of M says that it is owed royalty payments from June 2011 through the present date for St. Jude's manufacturing and selling of the EPIC™ and TRIFECTA™ products. In addition, U of M says that it is owed royalty payments for St. Jude's use of technology that is covered by the license agreement.

St. Jude filed a two-count counterclaim:

Count I- Unjust Enrichment
Count II- Declaration of Invalidity

St. Jude seeks a declaration that the '775 patent is invalid. In addition, St. Jude says U of M will be unjustly enriched if it is allowed to keep royalty payments that it was never owed.

St. Jude says it changed its manufacturing process in April of 1998. Based on this change, St. Jude says it no longer uses the U of M's patents or technology that is covered by the license agreement, and its manufacturing and selling of the EPIC™ and TRIFECTA™ products is not covered by the license agreement. St. Jude says that, in

---

[2] On November 30, 2012, the complaint was amended. Like the original complaint, the amended complaint is in one count: breach of contract.

June of 2011, it became aware that the change in manufacturing process relinquished its royalty obligations under the license agreement.

### III. LEGAL STANDARD[3]

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of a complaint. To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007). See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio, 502 F.3d 545, 548 (6th Cir. 2007). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Id. at 678 (internal quotation marks and citation omitted).

---

[3] U of M brings its motion under Fed. R. Civ. P. 12(c) and 12(b)(6). A motion to dismiss under Fed. R. Civ. P. 12(c) is reviewed in the same manner as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). See Jelovske v. Bredesen, 545 F.3d 431, 434 (6th Cir. 2008). Therefore, the Court will apply the Fed. R. Civ. P. 12(b)(6) standard.

### IV. DISCUSSION

U of M says St. Jude's unjust enrichment counterclaim must be dismissed for failing to file a written claim notice under Mich. Comp. Laws § 600.6431. The Court of Claims Act, 600.6401, et seq. (the Act), provides that,

> No claim may be maintained against the state unless the claimant, within 1 year after such claim has accrued, files in the office of the clerk of the court of claims either a written claim or a written notice of intention to file a claim against the state or any of its departments, commissions, boards, institutions, arms or agencies, stating the time when and the place where such claim arose and in detail the nature of the same and of the items of damage alleged or claimed to have been sustained, which claim or notice shall be signed and verified by the claimant before an officer authorized to administer oaths.[4]

Mich. Comp. Laws § 600.6431(1).

The Act provides that the Court of Claims generally has exclusive jurisdiction over claims against the state, see Mich. Comp. Laws § 600.6419, but that a claimant is not permitted to file a claim in the Court of Claims "against the state nor any department, commission, board, institution, arm or agency thereof [if the claimant] has an adequate remedy upon his claim in the federal courts." Mich. Comp. Laws § 600.6440. Essentially, where a claimant has an adequate remedy in federal court, the Court of Claims is stripped of subject matter jurisdiction to hear the claim.

U of M says St. Jude's failure to comply with Mich. Comp. Laws § 600.6431(1) is a statutory bar to its counterclaim. U of M has not provided the Court with a single case applying Mich. Comp. Laws § 600.6431(1) to bar a counterclaim against a state agency, where the state agency is the party who initiates the lawsuit in federal court. Nor would

---

[4] U of M is a creature of the Michigan Constitution, and, as such, a part of the State of Michigan. See Ritter v. University of Mich., 851 F.2d 846, 848 (E.D.Mich. 1988).

such a strained interpretation of Mich. Comp. Laws § 600.6431(1) make sense. As explained by the Michigan Court of Appeals, the purpose of Mich. Comp. Laws § 600.6431(1) "is to apprise the governmental agency that an action is contemplated, so that they may take appropriate measures to gather evidence before the requisite information is lost." In re Estate of Fair v. State Veterans Facility of Mich., 55 Mich. App. 35, 39 (1974). Further, Mich. Comp. Laws § 600.6431(1) ensures "that notice will be provided to the proper governmental entity, thereby protecting plaintiffs and defendants alike from having the wrong component of government notified." McCahan v. Brennan, 492 Mich. 730, 744 (2012) (citation omitted) (emphasis in original).

When Mich. Comp. Laws § 600.6431(1) is read together with Mich. Comp. Laws § 600.6440 and Fed. R. Civ. P. 13(a), it is clear that the notice requirement does not apply to St. Jude's claim, whose only remedy is now in federal court. By bringing suit against St. Jude for breach of contract in federal court, U of M created a situation where St. Jude had to raise the unjust enrichment claim as a compulsory counterclaim. Fed. R. Civ. P. 13 states, in pertinent part,

> **(a) Compulsory Counterclaim.**
>
> **(1) In General.** A pleading must state as a counterclaim any claim that– at the time of its service– the pleader has against an opposing party if the claim:
>
> **(A)** arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and
>
> **(B)** does not require adding another party over whom the court cannot acquire jurisdiction.

The Sixth Circuit has explained that a failure to raise a compulsory counterclaim

bars the claim, whether it be under a theory of res judicata, or a theory of waiver or estoppel. Kane v. Magna Mixer Co., 71 F.3d 555, 562-63 (6th Cir. 1995) (citing Carnation Co. V. T.U. Parks Constr. Co., 816 F.2d 1099, 1103 (6th Cir. 1987)); see also Bluegrass Hosiery, Inc. v. Speizman Indus., Inc., 214 F.3d 770, 772 (6th Cir. 2000) ("According to the Supreme Court, claims coming within the definition of 'compulsory counterclaim' are lost if not raised at the proper time.") (citing Baker v. Gold Seal Liquors, Inc., 417 U.S. 467, 469 n.1 (1974)).  Indeed, this requirement "serves the desirable goal of bringing all claims arising out of the same transaction or occurrence before the court in a single action." Bluegrass Hosiery, 214 F.3d at 772.  The "logical relationship" test applies to determine "whether the issues of law and fact raised by the claims are largely the same and whether substantially the same evidence would support or refute both claims."  Central West Virginia Energy Co. v. Wheeling-Pittsburgh Steel Corp., 245 F. App'x 415, 424 (6th Cir. 2007) (quoting Sanders v. First Nat'l Bank & Trust Co. in Great Bend, 936 F.2d 273, 277 (6th Cir. 1991)).

Here, St. Jude's unjust enrichment claim is logically related to, and arises out of the same "transaction or occurrence that is the subject matter" of, U of M's breach of contract claim.  The issues of law and fact are largely the same and the same evidence would support or refute both claims.  Both claims require interpreting the license agreement and its effect on the parties' obligations.  In order to determine which party has put forth the correct interpretation of the license agreement, the Court must consider both claims. Thus, St. Jude's counterclaim is compulsory.

Because St. Jude did not have the option to bring its counterclaim in the Court of Claims after U of M brought its breach of contract claim in this Court, providing notice to the

7

Court of Claims clerk that it intended to file a counterclaim in this case would be meaningless. St. Jude's "adequate remedy"– in fact, its only remedy– is in federal court. Thus, the Court of Claims does not have subject matter jurisdiction to hear the counterclaim, see Mich. Comp. Laws § 600.6440, and St. Jude is not obligated to comply with the notice requirements for filing suit in that court. The Michigan legislature contemplated situations where a party bringing a claim against a state agency has an "adequate remedy" in federal court, and stripped the Court of Claims of jurisdiction in these cases. See Mich. Comp. Laws § 600.6440. This is one of these cases.

Further, U of M cannot claim that sovereign immunity bars St. Jude's counterclaim. By bringing this action in federal court, U of M waived any claim to sovereign immunity. See, e.g., Lapides v. Bd. of Regents of Univ. Sys. Of Georgia, 535 U.S. 613 (2002) (finding waiver of sovereign immunity where state removed a lawsuit from state court to federal court).

SO ORDERED.

        s/Avern Cohn
        AVERN COHN
        UNITED STATES DISTRICT JUDGE

Dated: February 25, 2013

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, February 25, 2013, by electronic and/or ordinary mail.

        S/Sakne Chami
        Case Manager, (313) 234-5160