UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REGENTS OF THE UNIVERSITY
OF MICHIGAN,

    Plaintiff/Counter-Defendant,

vs.                                                          Case No. 12-12908

ST. JUDE MEDICAL, INC.,                      HON. AVERN COHN

    Defendant/Counter-Plaintiff.

_____/

## MEMORANDUM AND ORDER GRANTING
## DEFENDANT/COUNTER PLAINTIFF'S MOTION TO
## STAY PENDING USPTO'S INTER PARTES REVIEW (Doc. 32)

### I. INTRODUCTION

This is a breach of contract/patent case. Plaintiff/Counter-Defendant Regents of the University of Michigan ("U of M") is suing Defendant/Counter-Plaintiff St. Jude Medical, Inc. ("St. Jude") claiming breach of a license agreement in which U of M granted St. Jude a licence under certain U of M patents, including U.S. Patent No. 5,746,775 ("the '775 patent"), and other U of M "technology." U of M's first amended complaint is in one count: breach of contract. St. Jude's first amended counterclaim is in two counts: count I- unjust enrichment; and count II- declaration of invalidity.

On May 2, 2013, the United States Patent and Trademark Office ("USPTO") granted St. Jude's petition for *inter partes* review of the validity of the '775 patent. Now before the Court is St. Jude's motion to stay pending USPTO's *inter partes* review (Doc. 32). For the reasons that follow, the motion is GRANTED. This case is STAYED in its

entirety until the completion of the *inter partes* review by the USPTO.

## II. BACKGROUND

The material facts are stated in the Memorandum and Order Denying U of M's Motion to Dismiss Count I of St. Jude's First Amended Counterclaim (Doc. 30) and are not repeated here.

To briefly summarize, on September 1, 1997, U of M and St. Jude entered into a license agreement in which U of M granted St. Jude an exclusive license under certain U of M patents, including the '775 patent, entitled "Method of Making Calcification-Resistant Bioprosthetic Tissue." The license agreement requires St. Jude to pay royalties for use of U of M's licensed patents, including the '775 patent, in the United States and abroad. The licence agreement also requires St. Jude to pay royalties for use of U of M's "technology," as defined in the license agreement.

U of M says that the license agreement requires St. Jude to pay royalties on its EPIC™ and TRIFECTA™ cardiovascular valve products, which U of M says are manufactured using a process claimed in the '775 patent. Up until June 13, 2011, St. Jude was paying royalties for its manufacture and use of the EPIC™ and TRIFECTA™ products in and outside of the United States. However, on June 13, St. Jude notified U of M by letter that its EPIC™ and TRIFECTA™ products sold outside of the United States were not subject to any royalty obligation under the license agreement. Further, St. Jude claimed it had overpaid royalties for EPIC™ and TRIFECTA™ products manufactured and sold outside of the United States from 2009 to 2011. St. Jude claimed the overpayment was approximately $4.3 million, and that it would apply this amount as a credit towards future royalties.

After St. Jude stopped paying royalties, U of M filed this breach of contract case. U of M says that it is owed royalty payments from June 2011 through the present date for St. Jude's manufacturing and selling of the EPIC™ and TRIFECTA™ products. In addition, U of M says that it is separately owed royalties for St. Jude's use of non-patented "technology" that is covered by the license agreement.

St. Jude seeks a declaration that the '775 patent is invalid. In addition, St. Jude says U of M will be unjustly enriched if it is allowed to keep royalty payments that it was never owed. St. Jude says it changed its manufacturing process in April of 1998. Based on this change, St. Jude says it no longer uses the '775 patent or "technology" that is covered by the license agreement, and its manufacturing and selling of the EPIC™ and TRIFECTA™ products is not covered by the license agreement.

On November 9, 2012, while this case was pending, St. Jude filed a petition with the USPTO for *inter partes* review of the '775 patent. St. Jude seeks a decision invalidating independent claim 23, and claims 25-29, which depend from claim 23. Under 35 U.S.C. § 314(a), the USPTO cannot authorize *inter partes* review unless it determines that the petitioner is likely to prevail with respect to at least one of the claims challenged. On May 2, 2013, the USPTO granted *inter partes* review and concluded that "the information presented in the petition shows that there is a reasonable likelihood that St. Jude would prevail on its challenge to the patentability of claims 23 and 25-29 of the '775 patent."

After the USPTO granted *inter partes* review, St. Jude filed this motion to stay pending completion of the USPTO's review (Doc. 32).

### III. LEGAL STANDARD

Under the *inter partes* review provisions, a civil action challenging the validity of

3

a patent is not automatically stayed where, as here, there is a counterclaim challenging the validity of a patent. 35 U.S.C. § 315(a)(3). Rather, courts have broad discretion to determine whether a stay is appropriate. *Everlight Elecs. Co., Ltd. v. Nichia Corp.*, No. 12-11758, 2013 WL 1821512, at *6 (E.D. Mich. April 30, 2013). To determine whether a stay pending *inter partes* review is appropriate, courts apply the same factors as determining whether to stay a case pending reexamination. *See, e.g.*, *Star Envirotech, Inc. v. Redline Detection, LLC*, No. 12-01861, 2013 WL 1716068, at *1 (C.D. Cal. April 3, 2013). The factors are: "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party." *Id.* (citations and internal quotation marks omitted).

## IV. DISCUSSION

A review of the papers and consideration of the factors relating to a stay listed above leads to one conclusion: this case should be stayed in its entirety. The papers, including U of M's brief in support of summary judgment (Doc. 26), show that the '775 patent, and its construction, is intimately related to the issues in the case. Indeed, as St. Jude notes, U of M's jurisdictional statement in the complaint relies on 28 U.S.C. § 1338(a), which governs patent cases. More telling is U of M's substantial discussion of the '775 patent in its summary judgment papers. As summarized by St. Jude,

> Michigan's partial summary judgment motion reflects its accurate view of the centrality of the '775 Patent in this case. Michigan's entire analysis of "breach of contract" accounts for about one page of its 19-page memorandum. In other words, about 95% of its brief is devoted to patent issues. The first "Issue" raised by Michigan is "Claim Construction." The second issue is "Whether SJM's EPIC and TRIFECTA

4

> products are manufactured by a process that is covered by claims 23 and 25 of the '775 patent." Thus, claim construction and infringement are the core issues in this case *according to Michigan*.

(Doc. 35 at 2, St. Jude's Reply Br.) (emphasis in original) (internal citations to record omitted).

The Court held a telephone conference with the parties on May 21, 2013 in which it directed U of M to submit a proposed discovery order staying the case as to issues of infringement and invalidity while allowing discovery to proceed on the breach of contract claim. U of M's draft order proposed discovery on the following issues to proceed:

(a) U of M's claim for breach of contract, including discovery relating to U of M's pending motion for summary judgment;

(b) St. Jude's counterclaim for unjust enrichment; and

(c) any defenses raised by the parties, other than invalidity of the '775 patent.

St. Jude responded that U of M's proposed discovery order does not adequately stay the issues related to infringement and invalidity. St. Jude proposed language reflecting that discovery would proceed on the breach of contract claim as long as the discovery did not relate to infringement or invalidity. Of interest is that U of M did not particularly describe the issues which define what it says is its breach of contract case and did not particularly describe the issues which define what it says is its patent case. U of M has not contrasted the interrelated claims. Nor did U of M describe what discovery it seeks to obtain relating to what it says is the contract case.

After reviewing the parties' correspondence regarding the proposed discovery order, it is clear that the breach of contract issues cannot be separated from the

infringement and invalidity issues. Indeed, as the Court reads U of M's motion for summary judgment (Doc. 26) and particularly the statement of material facts (Doc. 26-1), the patent issues in the case are intermingled with the breach of contract issues. Allowing discovery to proceed on the breach of contract issues will necessarily implicate discovery relating to the patent issues. To divide the contract issues from the patent issues will be a complicated task and would put an undo burden on the Court as it tries to define the issues in the case going forward. This task will be particularly difficult given the contentious nature of the case and the parties' past inability to agree on basic issues.

In sum, the case is still in its early stages. The patent issues to be decided by the USPTO's *inter partes* review will likely have a significant impact on the issues in the case overall. Prudence suggests the proper course to follow is to stay proceedings until the USPTO completes its *inter partes* review.

SO ORDERED.

   S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: May 31, 2013

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, May 31, 2013, by electronic and/or ordinary mail.

   S/Sakne Chami
Case Manager, (313) 234-5160